JOSEPH C. SEACREST ET AL., APPELLEES, v. BOARD OF COUNTY COMMISSIONERS OF LANCASTER COUNTY ET AL., APPELLEES: JOHN J. CONNIFF ET AL., INTERVENERS, APPELLANTS.

FILED DECEMBER 14, 1918. No. 20151.

1. Highways: PAVING ASSESSMENT: RELEVY. A county board may relevy an assessment of a paving district under section 3, ch. 200, Laws 1915, if there has been an "irregularity in the proceedings on any special assessment." An assessment made without the notice to property owners which the statute requires is such "irregularity."

2. ————: COST OF IMPROVEMENT: PAYMENT BY COUNTY. If the board, in its resolution creating the district, provides that the entire cost of the improvement shall be paid by the property owners of the district, and upon petition of the property owners the improvement is duly made, without objection of any property owner, and the cost of the improvement is not greater than the benefit to the property of the district, the cost of the improvement must be levied upon the property of the district, and the board will not be authorized to pay a substantial part of such cost with the money of the county.

3. ————: IMPROVEMENTS: ASSESSMENTS. Each tract in the district is to be assessed in proportion to its benefit by the improvement. If it is taxed in excess of the benefit, the remedy is provided by statute.

APPEAL from the district court for Lancaster county: WILLARD E. STEWART, JUDGE. *Affirmed.*

*Stewart & Stewart* and *Arthur W. Richardson,* for appellants.

*F. M. Hall, J. A. Brown, H. W. Baird, F. D. Williams* and *Frank A. Peterson, contra.*

SEDGWICK, J.

In June, 1915, a petition of property owners was filed with the county board of Lancaster county asking for the pavement of the highway lying between the city of Lincoln and the village of College View, known as

102 Neb.—54

"Sheridan boulevard;" and, within a few days thereafter, the county board, acting upon said petition, after finding that it was in compliance with the statute, passed a resolution organizing the paving district known as "Paving District No. 7 of Lancaster county," making the district include "all of that portion of Sheridan boulevard lying upon each side of the right of way of the Citizens Interurban Railway Company from the corporate limits of the city of Lincoln, Nebraska, to the corporate limits of the village of College View, Nebraska," reciting the real estate that would be benefited thereby, and providing how the work should be done, and that "the cost of grading, guttering, curbing and paving of all intersections and returns, and all expenses incidental to all of said improvements, shall be assessed against the property benefited in said district as herein above mentioned in proportion to the benefits, not exceeding the actual cost thereof."

The paving was duly done in pursuance of these proceedings, and on the 17th day of July, 1916, the county board assessed against the property of the district the full cost of the improvement as specified in the order creating the district. This assessment afterwards was objected to by some of the property owners on the ground that they had protested against the assessment, and had not had notice thereof, and an opportunity to be heard, and the county board set aside the assessment under the provision of section 3 of the act of 1915 (Laws 1915, ch. 200): "In cases of omission, mistake, defect, or any other irregularity in the proceedings on any special assessment said board, sitting as a board of equalization, upon giving notice, as provided in the first instance for levying assessments, shall have power to correct such mistake, omission, defect or irregularity, and levy or relevy, as the case may be, a special assessment on any or all property in the district, in accordance with the net

special benefits to the property on account of such improvement." The board thereupon proceeded to make a reassessment pursuant to this provision of the statute, and in doing so provided that $7,000 of the cost of the improvement should be paid by the county, and directed the county treasurer to make certain payments toward the improvement out of the funds of the county.

These plaintiffs, as citizens and taxpayers of the county, began this action to enjoin these payments. Certain of the property owners of the district intervened, and contended in the trial court that this second assessment and these payments by the county were legal. The members of the county board, the original defendants, answered, alleging the regularity of the proceedings in the first assessment, and alleging their good faith in the matter, and asking the direction of the court in regard to their duties. The trial court found that the action of the board in setting aside the first assessment was valid; that the second assessment and proposed payments by the county were unlawful; enjoined the making of such payments; and directed a reassessment. The interveners have appealed. The county attorney has filed a brief in this court on behalf of the county board, maintaining that the judgment of the district court is correct.

The act of 1915, under which this action was brought (Laws 1915, ch. 200), was very properly amended by the act of 1917 (Laws 1917, ch. 152). As amended, it specifically provides: "Such districts shall be created by resolution of the county board, and said board shall in said resolution designate and fix the proportion of the total cost of such work and improvements which shall be paid out of said county paving fund. * * * Provided, however, no such work and improvements shall be finally ordered or constructed unless a petition shall be signed by the owners of a majority of the property chargeable with the cost of the improvement

or part thereof, * * * which petition shall be filed with said board." This requires that the board ascertain the cost of the proposed pavement and create the district, and state in advance the amount that will be taxed against the property owners, and if with that information the required number of property owners petition for the improvement, and those who do not sign the petition, if any, fail to object and show cause why the improvement should not be proceeded with, the board may proceed and tax the portion of the cost designated in their resolution forming the district against the property benefited.

The county board did not have such a plain and definite guide in this case. And the record shows that they acted in the utmost good faith, endeavoring to protect the rights of the property owners, and the interests of the county and the public generally, to the best of their ability. Their resolution was plain that the whole expense of the improvement would be taxed to the property owners. With this knowledge the property owners made no objection, and did not suggest to the board that the cost of the improvement would be more than their property would be benefited, and now, after the improvement has been made and the costs incurred, they seek to have the county pay a substantial part of the cost of the improvement. We have not seen in this record substantial proof that the property of the district generally will not be benefited as much as the total cost of the improvement. These interveners insist that their property is so located that it will not be benefited in the amount taxed against it by the first assessment. If so, that is to be remedied by the apportionment and assessment ordered by the decree of the trial court. If the assessment made by the board is "illegal, inequitable and unjust," if it should result in assessing against any lot more than the benefits thereto, section 4 of the act of 1915 affords a remedy.

The county board is of the opin.on that they ought not now use the county's money for that purpose, and we think they are right. This improvement was made under the plain public record that the cost thereof would be paid by the property owners of the district; every one acquiesced therein.

The judgment of the district court is

AFFIRMED.

LETTON and ROSE, JJ., not sitting.